The court took time to conſider it: and the caſe has never ſince been mentioned.

---

# ALLEGHENY COUNTY,

## September Term, 1794.

NATHANIEL IRISH, Inſpector of flour, *qui tam*, *&c.*
*v.* ROBERT ELLIOT and ELIE WILLIAMS.

THE inſpector declared, that *Elliot* and *Williams* offered to him, for his inſpection and examination, 88 barrels or caſks of flour, then intended for exportation by them; which ſaid caſks, under an act of aſſembly of 5th *April*, 1781, entitled, an act to prevent the exportation of bread and flour not merchantable, &c. were

1794.

of the defcription number 2, and ought to have contained each 196 *lbs.* when, in fact, they did not contain 196 *lbs.* but were deficient 1469 *lbs.* whereby action accrued to him, to have 55*l.* 1*s.* 9*d.* that is to fay, 9*d.* per *lb.* deficient.

Confidering this as a mere queftion of law, the counfel on both fides agreed to fubmit it to the opinion of the court.

*Woods*, for the plaintiff. The act for preventing the exportation of bread and flour not merchantable makes the cafk and flour forfeitable for deficiency of weight, and prefcribes the method of recovering the forfeiture. The fupplement to this act fubftitutes the forfeiture of 9*d.* per *lb.* deficient, inftead of the whole flour and cafk. This is favourable to the exporter. The act to regulate the infpection of flour in thefe weftern counties refers to the firft law, and, of courfe, to all the fupplements. Therefore the infpector has now no authority to feize the cafk and flour, but only exact 9*d.* per *lb.* deficient. Divers ftatutes, relating to the fame thing, are all taken into confideration, in confidering any one of them. The act of 39 *El. c.* 3, though expired, yet having been undoubtedly under the view of the legiflature, when the act of 43 *El. c.* 2 was made, was taken into confideration in the conftruction of this laft act.— So 13 *El. c.* 10, being enlarged by 14 *El. c.* 11, though only the former be recited by 18 *El. c.* 11, it has been holden that the latter is virtually recited therein. The intention of the makers of a ftatute ought to be taken into view, rather than its letter. The legiflature could not mean to make the flour and cafk forfeitable here. And it is impoffible to lay afide the claufe impofing that forfeiture, without fubftituting the claufe in the fupplement directing the forfeiture of 9*d. per lb.* The infpectors and millers are fubject to like duties, penalties, &c. as in cafe of the port of *Philadelphia.*

*Brackenridge*, for the defendant. The act of *September*, 1791, refers to a particular act paffed on a certain day, the 5th *April*, 1781. A fupplement conftitutes, of itfelf, an act diftinct from the original act, as much as an act to amend an act does. Extending an act does not extend a fupplement. The act of 28th *December*, 1781, recognifes a diftinction between an act and a fupplement.—

*Margin references:* 1 *St. L.* 885, 889. — 2 *St. L.* 2. — 3 *St. L.* 156. — 4 *Bac.* 646. — *ib.* 647. — 3 *St. L.* 156. — 3 *St. L.* 156. — 2 *St.L.* 2, 3.

1794.

From an overfight, we cannot infer an intention to fupply it. And courts cannot fupply the want of reflection, in the legiflature. The intention of the legiflature, is not what they intended to do, but did not; but what they have really done, difcovering this by their expreffions. We fay, no penalty is impofed by the law. The legiflature has omitted it. The act does not refer to all the acts on the fubject, but to an individual act, intitled an act, &c. What the legiflature thought they had done, but did not, is no law. A fupplement, or a new law, muft be made. Penal acts are ftrictly bounded. This is for a penalty, and the conftruction contended for is, at leaft, doubtful.

The court took time to confider. And, at the next term, Mr. *Brackenridge*, fuggefting, that the allegations in the declaration were more unfavourable to the defendants, than the facts of the cafe were, defired to withdraw the fubmiffion, that he might plead to iffue to be tried by a jury. This was done; and the caufe, after fome time, was fettled by a reference.

It may not however be improper to add here the opinion which I had drawn up, to be delivered on the fubmiffion. It is as follows:—

The infpector declared, &c.

On this ftatement, It has been fubmitted to us to determine, whether 9*d. per lb.* of deficient weight be recoverable.

3 *St. L.* 156. The counfel for the plaintiff contended, that the weftern infpection law enacting, for the infpection of the weftern counties, the regulations contained in the act 1 *St. L.* 883. intitled "An act to prevent the exportation of bread and flour not merchantable, and for repealing, at a certain time, all the laws heretofore made for that purpofe," does, of courfe, enact all the regulations contained in 2 *St. L.* 2. the fupplement to that act: for all ftatutes, relating to 4 *Bac.* 646. the fame fubject, are to be confidered as one law. The forfeiture of 9*d. per lb.* deficient, impofed by the fupplement, cannot be laid afide, without adopting the feverer forfeiture of the whole cafk, impofed by the original law; and the intention of the legiflature is to be regarded rather than ftrict expreffions.

The counfel for the defendant contended, that, this being a penal law, its conftruction will not be extended

by implication; for a penalty will not be exacted on a doubtful construction of a law. The intention of the legiflature, that will be regarded by the judiciary, is not what they intended to do, and did not; but what they intended in what they really did, collecting their intention from their expreffions. From an overfight in the legiflature, courts cannot infer an intention to fupply the overfight, and proceed themfelves to do what the legiflature would have done, if they had obferved the omiffion. It would be ftrange, if what the legiflature thought they had done, but did not, were a law; or if courts fhould take upon them to fupply the want of reflection of the legiflature, and judge or pronounce the law, not from the expreffions, but from the thoughts of the legiflators. This is a *cafus omiffus*, and can be remedied only by a new law. For fuch a deficiency, there is a penalty impofed by the eaftern infpection law, but none by the weftern. A fupplement is, in all refpects, a diftinct act from the original. Our infpection law refers to a certain act, which appears to have been paffed on a certain day, to wit, 5th *April,* 1781; and extending this act to us does not extend the fupplement alfo.

Such is the fubftance of the arguments on both fides.

It cannot be denied, that the rule, "that divers ftatutes relating to the fame thing ought all to be taken into confideration, in conftruing any one of them," is a found rule of conftruction; in like manner as that all the parts of one ftatute are to be taken into confideration, in the conftruction of any one part. So, alfo, of all the parts of a deed; and fo of all deeds relating to one tranfaction. The whole is confidered as one whole, one fyftem, one law, one deed. But this is a rule of conftruction only, and makes them one, only for the purpofe of conftruction or mutual explanation. It does not mean, that referring to *one* act neceffarily refers to *all* acts on the fame fubject; or that extending *one* act to a diftrict, where it did not operate before, extends all *other* acts on the fame fubject to this diftrict.

Among other notes read by the plaintiff's counfel, from *Bacon's Abridgement,* the following feems moft, or is rather the only one that feems, to fupport his opinion. "The 13 *El. c.* 10, concerning leafes made by fpiritual 4 *Bac.* 646.

*R*

1794.

persons, being enlarged by the 14 *El. c.* 11, although only the former of thefe ftatutes be recited in the 18 *El. c.* 11; it has been holden, that the latter is virtually recited therein."

It is dangerous to found opinions on abridgments however refpectable. On turning to the cafe of *Bayley v. Murin,* referred to in this note, the doctrine ftated in the abridgment appears to be one of the reafons for a doubt or opinion of only one of the judges, a moft refpectable one indeed, chief juftice *Hale,* but this opinion was contradicted by the reft of the court. On examining the two ftatutes of 13 *El. c.* 10, and 14 *El. c.* 11, it appears, that the 14 *El.* is, as in the cafe cited it is called, but a kind of appendix to the 13 *El.* a conftruction or explanation of its extent: and was made on purpofe to define, extend, or limit the fenfe of it and other ftatutes, and is intitled " An act for the continuation, explanation, perfecting, and enlarging of divers ftatutes." The fupplement, in the cafe before us, is an *alteration* of the original law. And to fay, that the law of *September,* 1791, by referring to the law of *April,* 1781, referred alfo to the law of *December,* 1781, is faying, that it enacts different regulations, from thofe to which it refers.

No authority therefore has been fhewn, to juftify an opinion, that extending one ftatute, of courfe, extends all its fupplements, or all ftatutes on the fame fubject. A fupplement feems to be a feparate law ; and to extend or repeal it, it muft be fpecially named. This very fupplement, which, it is contended, muft be confidered as extended with the original act, contains in itfelf a declaration, that it is a diftinct law from the original act ; for it provides, that " all fines and penalties, herein mentioned, fhall be recovered, and applied, in manner and form, as directed by *this act,* and *the act to which this act is a fupplement.*" And another fupplement to this original act, extending the regulations, fines, penalties, and forfeitures of the original act and its fupplements, to the cafes provided for in this laft fupplement, provides, that " all and every the regulations, fines, penalties and forfeitures, in *the faid recited act,* and *the feveral fupplements* thereto, and by *this act,* made, impofed, and inflicted on any perfons who fhould, &c. or fhould or fhall offend againft

1794.

the faid *recited act*, or *the fupplement thereto*, or againft *this act*, fhall, &c. as if the article was inferted in the faid *acts*, or as if the faid regulations, fines, penalties, and forfeitures, were herein repeated.

If the legiflature enacting the law of 1791, and re- 3 *St. L.* 156. ferring to the law of *April*, 1781, referred to the law of 1 *St. L.* 883, *December*, 1781, they muft have referred alfo to the law 2 *St. L.* 2. of 1789—and, in both thefe laws, they muft have ob- —713. ferved the mode of expreffion ufed in the laws, when both an act and its fupplement are referred to. And if they turned over the volumes of the acts of affembly, and examined the expreffions conftantly ufed in all fuch references, they would have uniformly found in all the fame recital of act and fupplement or amendment ; and no where, in my obfervation, would they have difco-vered, that the legiflature, intending to extend, confirm, or repeal, an original act and fupplement or amendment, ever confined its expreffion to the original law only, but always repeated the titles of all the acts to be extended, confirmed, or repealed.\*

If then the legiflature which enacted the weftern in-fpection law, in referring to the law of *April*, 1781, did not ufe fimilar expreffions to thofe ufed by all other le-giflatures, in referring alfo to any fupplement, what are we to conclude from this, but that they did not mean to refer to any fupplement ? Againft this uniformity of ftile in all other laws, I fee no circumftances fufficiently ftrong, from which, in the cafe of a penalty, to infer an intention of the legiflature to extend to the weftern in-fpection, the fupplements to the law referred to. For us to fay, that they intended it, becaufe we may think they ought to have done it, is to make ourfelves legif-lators. And to fuffer executive officers, to model or apply to the exercife of their authority, fuch laws, or parts of laws, as they may think commodious, is too dangerous to be admitted, and is, in fact, making them legiflators. If, therefore, the fupplement be not ex-

\* St. L. 121-3, 131-8, 307-9, 311-2, 323-7, 333, 343, 358-73, 374, 444-9, 504-9, *Galloway's ed.*—2 St. L. 152, 162-7, 192-4, 221-4, 245-50, 282-7, 347-71, 373-4, 414-8, 493-9, 505-7. *M·Kean's ed.*

tended to the weſtern inſpection, the plaintiff's demand fails. It is better to ſay, that this caſe is not provided for, by our inſpection law, than to leave inſpectors at liberty to pick and chooſe, out of all the ſupplements, ſuch parts, as, from their circumſtances, *they may ſuppoſe* the legiſlature intended to apply to us. The law was not made for the benefit of the inſpectors. And, if thoſe concerned in the flour trade think the law imperfect, let them apply to the legiſlature for a new law, and a more complete ſyſtem.

In fact our inſpection law ſeems to have been drawn up with very little care. Though in the reference to the original law, the ſections providing for covering waggons, ſhallops, &c. are excepted yet the ſection inflicting penalties, for the defect of this, is not excepted: and, though the duty is diſpenſed with, the penalty may be exacted for the neglect of it, with more colour of authority, than for the deſiency which is the ground of this action. Of laws ſo careleſsly penned as little as poſſible of the meaning ought to be drawn from preſumption.

Laws impoſing a penalty are ſometimes conſidered as remedial laws. They have been conſidered as remedial, when the penalty goes to the party grieved. The penalties of theſe laws are not ſo applied; and it is the inſpector who ſues here, not the purchaſer or perſon concerned in the injury, if any injury exiſted. We know not that there was any fraud, and we cannot intend, that there was. Perhaps the flour was taken and to be delivered by weight, not by the barrel. Perhaps the flour was not to be exported *for ſale*. *Elliot* and *Williams* were and are contractors for the army : it might have been for the uſe of the army, and, on the delivery there, its quality and quantity would be examined. Our inſpection law impoſes a penalty on any perſon exporting flour out of the ſtate, from theſe counties, by means of the river *Ohio*, before the ſame be inſpected. Suppoſe an emigrant to *Kentucky* ſhould take in his boat a quantity of flour from theſe counties, for the uſe of his family for the year enſuing ; and not calling on the inſpector to examine it, ſhould be ſued for the penalty ; would the law be conſidered as remedial or penal ?

I take the caſe before us to be a penal action, on a

I muſt declare, that a penalty ought never to be exacted from any man omitting to do what he cannot *clearly* diſcern to be his duty to do. Were it therefore only *doubtful*, whether this regulation extended to the weſtern inſpection, I ſhould think this doubt alone a ſtrong, a concluſive argument againſt the plaintiff.

The weſtern inſpection law directs the ſame regulations, "*except as to the ſtamp on the plugs, which ſhall be marked with the letters W. P.* as are preſcribed by the act of *April,* 1781." Now were not the weſtern inſpection law careleſsly penned, and were it not, in many inſtances at leaſt, to be conſidered as a penal law ; ſome preſumption might be drawn from this expreſſion, that it was intended to refer alſo to the ſupplement of *December,* 1781. For this expreſſion ſeems rather to refer to the 5th ſection of the ſupplement, than to the correſponding 11th ſection of the original law.

*3 St. L. 156.*

*1 St. L. 883.*

*2 St. L. 3.*
*1 St. L. 886.*

On this ground alſo of this being a caſe on a penal law, I cannot conſent to apply to it the authority of a deciſion, in the caſe of *Williams v. Rougheedge,* which has not been cited. For, though that deciſion ſhows, that an act, reviving a principal act, may be held to revive, without naming it, an act explanatory of the principal act ; yet it was the caſe of an inſolvent debtor in priſon; and an equitable conſtruction was given to the reviving act, in favour of the priſoner's liberty. Here we are called on to ſtrain the conſtruction, to aid the recovery of a penalty.

*2 Burr. 747.*

On the whole, therefore, my opinion is for the defendant : and let the legiſlature provide for the omiſſion, by a new and complete ſyſtem.